UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUSTIN H., ) | |
|       Plaintiff, ) | |
| ) | |
|     v. ) | CAUSE NO.: 1:20-CV-265-JVB |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
|       Defendant. ) | |

## OPINION ORDER

Plaintiff Justin H. seeks judicial review of the Social Security Commissioner's decision denying his applications for disability insurance benefits and supplemental security income and asks this Court to reverse that decision and remand this matter to the agency for an award of benefits or, in the alternative, for further administrative proceedings. For the reasons below, this Court reverses the Administrative Law Judge's decision and remands this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

In Plaintiff's July 14, 2017 applications for benefits, he alleged that he became disabled on March 31, 2017. After a June 5, 2019 hearing, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of STEMI involving right coronary artery, coronary artery disease, status post stent placement, hypertension, seizures, hyperlipidemia, obesity, migraine, congestive heart failure, anxiety, and attention deficit hyperactivity disorder (ADHD). (AR 18). The ALJ determined that Plaintiff did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further determined that Plaintiff had the residual functional capacity (RFC) to

> perform sedentary work . . . except he can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must avoid commercial driving, unprotected heights, and dangerous moving machinery. He could tolerate occasional exposure to extreme heat and extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation. Work can have no flashing lights like strobe lights. He must work in a moderate noise environment or less. He can perform simple, routine, and repetitive tasks with no production rate pace like assembly-line work with only occasional simple work-related decision-making. He can maintain attention and concentration for two-hour segments. He could respond appropriately to occasional changes in the workplace. He could have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training, and could have frequent interactions with coworkers and occasional interactions with the general public.

(AR 21). The ALJ found that, in light of Plaintiff's RFC, Plaintiff was unable to perform his past relevant work but was able to perform the representative occupations of addresser, table worker, and document preparer. (AR 26). Accordingly, the ALJ found Plaintiff to be not disabled from March 31, 2017, through September 5, 2019, which is the date of the ALJ's decision. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [he] can perform [his] past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff argues that the ALJ erred by not incorporating the limiting effects of all of Plaintiff's impairments and by basing the Step 5 finding on unreliable testimony.

### A. Unincorporated Limitations

Plaintiff asserts that the ALJ failed to include his limitation regarding frequency of urination. Plaintiff took the medication furosemide, which is used to reduce water levels in the body through diuresis (that is, increased or excessive production of urine). Plaintiff testified to urination frequency of five to six times per hour in the morning and one to two times per hour from noon until supper. (AR 53).

The Commissioner counters that Plaintiff has failed to identify medical evidence of his frequent urination. However, the medical evidence shows that Plaintiff took furosemide. *See, e.g.*, (AR 788). As Plaintiff identifies, furosemide is used to treat several different medical conditions, including hypertension (which, as the ALJ acknowledges, Plaintiff has), and the medication works by causing the kidneys to increase the flow of urine. *See* (Pl.'s Br. 18, ECF No. 21 (quoting https://www.mayoclinic.org/drugs-supplements/furosemide-oral-route/drg-20071281?p=1)). That is, the evidence shows that Plaintiff takes a medicine that has the intended purpose of increasing urine output. There is medical evidence that corroborates Plaintiff's urinary frequency.

3

The ALJ completely neglected to consider Plaintiff's allegations of urinary frequency. When the ALJ summarized Plaintiff's hearing testimony, she did not mention his statements of needing to urinate multiple times per hour in the morning and one to two times per hour in the afternoon. *See* (AR 21-22 (ALJ's summary of Plaintiff's testimony)).

In *Terry v. Astrue*, the Seventh Circuit Court of Appeals found error warranting remand where the ALJ "d[id] not even mention Terry's pelvic floor and urinary disorders." 580 F.3d 471, 477 (7th Cir. 2009). Further, to the extent the urinary frequency can be considered a side effect, Social Security Ruling 16-3p provides that when evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the Social Security Administration will consider the "side effects of any mediation an individual takes or has taken to alleviate pain or other symptoms." 2016 WL 1119029, at *7 (Mar. 16, 2016).

It was error for the ALJ to completely ignore the urinary frequency caused by Plaintiff's medication. As the vocational expert testified, typical breaks in a workday are one meal break and two additional, shorter breaks. (AR 63). Extra breaks "should be brief and infrequent, once or twice a week to use the restroom, five minutes or less." (AR 63-64). Plaintiff's testimony of his urinary frequency appears incompatible with the schedule that the expert indicated is tolerated in full-time, competitive work. The ALJ's error in failing to address Plaintiff's allegations of urinary frequency is not harmless because the Court cannot "predict with great confidence what the result of remand will be." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). Thus, this error requires remand.

Plaintiff also argues that the ALJ's RFC finding only addresses migraine triggers that Plaintiff would encounter in the workplace and fails to address that Plaintiff's migraines might be triggered outside the workplace and prevent him from being able to work. Plaintiff testified that

4

his migraines are triggered by stress, lights (such as strobe lights), and sounds (such as vehicle noise). (AR 43, 50). Plaintiff also testified that sometimes he just wakes up with a migraine. (AR 50).

The Commissioner contends that Plaintiff has not identified any medical evidence supporting this argument. This argument is confusing. Plaintiff's migraines are documented in the medical evidence of record, as the ALJ's own decision shows. *See* (AR 22 (listing "migraine" as a severe impairment), 27 (citing AR 716 as evidence of Plaintiff having daily migraines)). The Commissioner has not provided any reason for finding that Plaintiff's testimony of his migraine triggers must be corroborated my medical evidence. On remand, the ALJ is directed to consider how Plaintiff's migraines, even when triggered outside of work, will affect his ability to work instead of only focusing on how to reduce migraine triggers in the workplace.

Lastly, Plaintiff argues that his seizures, though infrequent, would likely generate occasional work absences which, combined with the migraine absences, would exceed the tolerated number of annual work absences. The ALJ is also directed, on remand, to consider the effects of all of Plaintiff's impairments in combination.

### B. Vocational Expert Testimony

Plaintiff maintains that the vocational expert's testimony regarding the national number of jobs available was unreliable and was based on defective and vague methodology. Per Plaintiff, this is another error that requires remand. Here, however, the Court is not persuaded.

The expert explained that the numbers she testified to were provided by the Job Browser Pro System. Plaintiff's argument is that the calculation of jobs available is "pulled out of thin air" if the expert cannot provide the empirically-based mathematical formula by which the number of jobs in each DOT occupation is derived from the total number of jobs in each SOC code. (Pl.'s Br.

20, ECF No. 21). Or, alternatively, if the expert does not know the formula but it does exist, then the methodology is still impermissible because it cannot be meaningfully cross-examined or judicially reviewed.

Here, the expert testified that she relied on the Job Browser Pro System, which uses "information from the BLS [Bureau of Labor Statistics], the occupational Employment Survey." (AR 64). When asked for the mathematical formula from which the DOT occupation number is derived from the SOC code, the expert said: "The industries, percentages come in for each industry. They look at the *Dictionary of Occupational Titles* code and the industries likely to be employed in and look at the numbers coming in to arrive at it." (AR 66). She clarified that she did not know the exact mathematical formula, (AR 66), but that the method she used was accepted among vocational experts, (AR 68).

The Court is aware of fairly recent cases from the Seventh Circuit Court of Appeals that cast doubt on the accuracy of statistics provided by vocational expert testimony. *See Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018); *Alaura v. Colvin*, 797 F.3d 503, 507-08 (7th Cir. 2015). These cases do not counsel remand here.

First, this is not a case where the expert assumed that the jobs in the economy in each SOC code are distributed equally among each DOT occupation classified under the SOC code, as was the case in *Chavez* and *Alaura*. Second, the expert testified that the system she uses (and which is accepted among her profession) looks at the percentages from each industry to arrive at the estimates. Though the ALJ's decision is being remanded for the issues regarding Plaintiff's limitations identified in the previous section, the Court does not find an independent ground for remand regarding the vocational expert's testimony.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief[1] requested in Plaintiff's Opening Brief [DE 21], **REVERSES** the decision of the Commissioner of the Social Security Administration, and **REMANDS** this matter for further administrative proceedings consistent with this Opinion and Order.

SO ORDERED on December 14, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT

---

[1] Plaintiff's primary request for an award of benefits is only proper if "all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).